UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MACMASTER,

                      Plaintiff,

v.

DAVID BUSACCA, et al.,

                      Defendants.

_____/

Case No. 2:21-cv-11052

HONORABLE STEPHEN J. MURPHY, III

## **OMNIBUS OPINION AND ORDER**

Plaintiff Sean MacMaster sued Defendants for several constitutional violations under 42 U.S.C. §§ 1983, 1988 and state malicious prosecution laws. ECF 1. Four Defendants have answered the complaint. ECF 31; 32; 36; 43. The other two, Brian Kolodziej and Laura Moody, moved to dismiss the complaint.[1] ECF 16; 34. Both Defendants asserted absolute and qualified immunity defenses. Although the parties fully briefed the motions, Plaintiff moved for leave to amend the complaint. ECF 41. Only Defendant Moody objected to the motion for leave; she argued that the amended complaint is futile. ECF 44, PgID 701–05. The Court held a hearing on the pending motions. For the following reasons, the Court will grant in part and deny in part Kolodziej's motion to dismiss and Plaintiff's motion to amend, and the Court will grant Moody's motion to dismiss.

---

[1] Although Defendant Kolodziej is appearing pro se, he is not the typical pro se defendant; he was a former Michigan Prosecutor. ECF 1, PgID 4.

## BACKGROUND[2]

Plaintiff was married to Defendant Johanna MacMaster. ECF 1, PgID 5. The two have a young daughter. *Id.* The two have also engaged in a prolonged custody dispute over their daughter. *Id.* Five years ago, Defendant MacMaster falsely accused Plaintiff of sexually abusing their daughter. *Id.* at 6. She brought the false accusations to the Oakland County Sheriff's Department and Child Protective Services. *Id.*

The Sheriff's Department and Child Protective Services investigated the accusations. *Id.* at 8. And the Oakland County Prosecuting Attorney later declined to charge Plaintiff. *Id.*

After Defendant MacMaster found out about the declined charges, she asserted new false allegations against Plaintiff. *Id.* at 9. The Sheriff's Department again investigated, and the Prosecuting Attorney again declined to charge Plaintiff. *Id.* Child Protective Services meanwhile found that the allegations against Plaintiff lacked a preponderance of the evidence. *Id.* at 10.

Still, Defendant MacMaster persisted and brought her false allegations to the Michigan State Police and the Federal Bureau of Investigation. *Id.* at 9–10. Both declined to investigate after speaking with the Oakland County Sheriff's Department. *Id.*

---

[2] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.

In 2018, Defendant MacMaster met Defendant Kolodziej, an assistant prosecutor for Macomb County. *Id.* at 10–11. Kolodziej agreed to further investigate the false accusations, despite Defendant MacMaster's allegations that the sexual abuse occurred in Oakland County, Michigan. *Id.* at 11–12. Kolodziej then contacted a Center Line Police Officer, Defendant Gerald.[3] *Id.* at 12. Kolodziej and Gerald later sifted through documents that Defendant MacMaster had provided and investigated the false accusations over the next few months. *Id.* at 12–13.

In May 2018, Kolodziej reached out to a Michigan Assistant Attorney General to persuade the Attorney General's office to charge Plaintiff with crimes. *Id.* at 13. The Assistant Attorney General informed Kolodziej that "it was not routine procedure to overrule county prosecutor charging decisions and [that] they would not issue charges." *Id.*

Several months later, Kolodziej started a new job as a Michigan Assistant Attorney General. *Id.* at 18. His new job tasked him to prosecute sexual assault cases involving adult victims. *Id.*

As an Assistant Attorney General, Kolodziej contacted a Michigan State Police Trooper, Defendant Busacca. *Id.* As a Trooper, Busacca mostly enforced traffic laws and responded to citizen requests for assistance. *Id.* Despite Busacca lacking any experience handling sexual assault cases—let alone child sexual assault cases— Kolodziej asked Busacca to help investigate Defendant MacMaster's false allegations against Plaintiff. *Id.* at 19.

---

[3] Center Line Police Department is in Macomb County. ECF 1, PgID 12.

During Busacca's investigation, he and Kolodziej met with an Assistant Attorney General and asked her to handle Defendant MacMaster's accusations. *Id.* at 20. But she later told the Attorney General's Chief of Staff, Defendant Moody, that she was not hired to handle the case. *Id.* Nonetheless, Moody—who was also Kolodziej's supervisor—allowed Kolodziej to work on the case, including during off hours. *Id.* at 20–21.[4]

As the investigation continued, Kolodziej met Plaintiff's daughter several times. *Id.* at 22–23. In one meeting, Kolodziej arranged for Plaintiff's daughter and Defendant MacMaster to tour the State Capitol. *Id.* at 22. In another meeting, Kolodziej had a squirt gun fight with Plaintiff's daughter in the Attorney General's office. *Id.* at 23. The two also went horseback riding and to an art museum with Defendant MacMaster and with an investigator from the Attorney General's Office, Defendant Schipani. *Id.*

The investigators later obtained a search warrant for Plaintiff's house. *Id.* at 24. Kolodziej drafted the factual allegations in the search warrant affidavit. *Id.* The search obtained no evidence of child sexually abusive material. *Id.* at 25.

Still, Kolodziej drafted a Request to Initiate Litigation, a form that the Attorney General required to charge Plaintiff with criminal sexual conduct charges. *Id.* The Request, however, lacked Kolodziej's name—it falsely stated another Assistant Attorney General had authored it. *Id.* The Attorney General later approved

---

[4] Throughout Kolodziej's time at the Michigan Attorney General's Office, Moody arranged for Kolodziej to receive four pay raises and a promotion. *Id.* at 21.

the Request based on Moody's support. *Id.* at 25–26. But Moody never told the Attorney General that Kolodziej engaged in unethical conduct or investigated the case. *Id.* at 26.

Michigan authorities later obtained an arrest warrant for Plaintiff on first degree criminal sexual conduct. *Id.* To obtain the warrant, Busacca testified before a state district court. *Id.* Kolodziej wrote the script for Busacca's testimony. *Id.* The script purposely omitted inconsistent statements from Plaintiff's daughter, omitted evidence that Defendant MacMaster had coached Plaintiff's daughter and created false accusations, omitted medical evidence that showed no sexual abuse occurred, omitted findings from other law enforcement investigations, and more besides. *Id.* at 26–30.

In May 2019, Kolodziej arranged a meeting to ask that his name and evidence of his involvement in the investigation be removed from one of Busacca's police reports. *Id.* at 31–32. Later in May, Kolodziej authored a letter to a Florida family law judge that supported Defendant MacMaster's attempt to suspend Plaintiff's parenting time with his daughter. *Id.* at 32. Yet Busacca claimed he authored the letter to the judge. *Id.*

Plaintiff was eventually arrested in Florida. *Id.* at 33. Plaintiff did not fight his extradition to Michigan. *Id.* at 34. But Kolodziej falsely claimed that Plaintiff was fighting extradition. *Id.* Plaintiff was therefore held without bond in Florida. *Id.* After a prolonged extradition, a Michigan judge granted Plaintiff a $250,000 bond. *Id.* at

35. During the bond hearing, Kolodziej elicited untruthful testimony from Schipani. *Id.*

While Plaintiff was being held without bond, Kolodziej resigned from the Michigan Attorney General's Office. *Id.* Kolodziej was exposed for having a sexual relationship with a victim in another case he was prosecuting. *Id.*

When a new prosecutor was assigned to Plaintiff's case, the prosecutor disclosed that Schipani "made inaccurate and untruthful statements in her testimony at the bond hearing" and that "Schipani and Kolodziej had an inappropriate relationship." *Id.* at 36. Schipani was later removed from the case and placed on leave. *Id.*

Plaintiff ultimately spent one-hundred, fifty-one days in solitary confinement until the Attorney General dropped the charges against Plaintiff. *Id.* Besides losing his job and salary, Plaintiff has lost more than three hundred days of parenting time with his daughter. *Id.* at 37.

In the complaint, Plaintiff asserted several claims against Kolodziej and Moody. First, Plaintiff asserted claims under 42 U.S.C. § 1983 against Kolodziej for Fourth Amendment violations based on *Franks v. Delaware*, unlawful search, and malicious prosecution. *Id.* at 37–42. Plaintiff also asserted a civil conspiracy claim under 42 U.S.C. § 1983 against Kolodziej for prosecution without probable cause. *Id.* at 45–46. Plaintiff last asserted a § 1983 claim against Kolodziej for a Fourteenth Amendment violation based on his pretrial detention. *Id.* at 47–48. The only claim

against Moody arose under § 1983 for supervisory liability and failure to train or supervise Kolodziej. *Id.* at 43–45.

## LEGAL STANDARD

I.  <u>Motion to Dismiss</u>

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430.

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

II.  <u>Motion to Amend</u>

Civil Rule 15 provides that after a responsive pleading is filed, a party may only amend its pleading with the written consent of the opposing party or with leave of the Court. Fed. R. Civ. P. 15(a)(2). The rule also provides that "[t]he [C]ourt should freely give leave when justice so requires." *Id.*; *see Foman v. Davis*, 371 U.S. 178, 182 (1962). To determine whether to grant leave to amend a pleading, the Court relies on six factors: (1) "undue delay in filing"; (2) "lack of notice to the opposing party"; (3)

"bad faith by the moving party"; (4) "repeated failure to cure deficiencies by previous amendments"; (5) "undue prejudice to the opposing party"; and (6) "futility of [the] amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (quotation omitted). A proposed amendment is futile if the pleading could not survive a motion to dismiss. *Id.*

**DISCUSSION**

Kolodziej and Moody asserted absolute and qualified immunity defenses. The Court will first address the absolute immunity defenses for each Defendant. After, the Court will address the qualified immunity defenses and Plaintiff's motion to amend the complaint.

## I. <u>Absolute Immunity</u>

Prosecutors have absolute immunity from civil suits that result from the exercise of their advocacy function. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Actions falling within the advocacy function are those "intimately associated with the judicial phase of the criminal process." *Id.* at 430. A prosecutor's role as an advocate includes "obtaining, reviewing, and evaluating [] evidence" before initiating a prosecution. *Id.* at 431 n.33. Immunity exists even when a prosecutor acts wrongfully or maliciously. *See Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989). But a prosecutor lacks absolute immunity for "investigative or administrative acts." *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003) (cleaned up). The Court must therefore look at "how closely related is the prosecutor's challenged activity to his role

as an advocate intimately associated with the judicial phase of the criminal process."
*Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (quotation omitted).

### A.  Kolodziej

Plaintiff asserted five claims against Kolodziej. The Court will evaluate, in turn, whether Kolodziej may assert absolute immunity for each claim.

#### 1.   Franks *Violation*

The first claim against Kolodziej essentially asserted that he violated Plaintiff's Fourth Amendment right under *Vakilian v. Shaw*, 335 F.3d 509 (6th Cir. 2003). ECF 26, PgID 166–67. "An investigator may be held liable under § 1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest." *Vakilian*, 335 F.3d at 517 (citing *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)).

Plaintiff alleged that Kolodziej drafted a script for Busacca to use to obtain an arrest warrant for Plaintiff. ECF 1, PgID 26. Busacca followed the script despite the script containing several false statements and omitting several serious facts. *Id.* at 27–30. Although Busacca was the official affiant, the claim still applies to Kolodziej because he allegedly drafted the affidavit information. *Id.*; *see Wolgast v. Richards*, 389 F. App'x 494, 502 n.5 (6th Cir. 2010).

That said, Kolodziej asserted that he is immune from the claim based on his role as a prosecutor. ECF 16, PgID 111. But simply being a prosecutor does not establish immunity; Kolodziej must have performed a task that was prosecutorial. *Forrester v. White*, 484 U.S. 219, 229 (1988).

The Sixth Circuit has held that prosecutors who drafted the affidavit for a search warrant were immune to a § 1983 claim that asserted Fourth Amendment violations. *Lomaz v. Hennosy*, 151 F.3d 493, 499 (6th Cir. 1998). Immunity attached because when the prosecutors "prepared the affidavit and the warrant," the evidence already "provided probable cause for prosecuting" the plaintiff. *Id.* "The purpose for which [the prosecutors] sought the warrant, therefore, was not primarily investigative, but was to obtain and preserve evidence." *Id.*; *see also Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) ("[P]repar[ing] and filing . . . charging documents" such as "the information and the motion" is "part of the advocate's function.").

In short, Kolodziej sought the arrest warrant so that he could bring charges against Plaintiff and extradite him to Michigan—not to investigate him for a crime. *See* ECF 1, PgID 31.[5] Kolodziej is therefore immune under *Lomaz* for the first claim.

To that end, absolute immunity attaches to Kolodziej's acts because he did not act beyond his authority. A prosecutor lacks immunity "for actions clearly beyond his authority." *Rouse v. Stacy*, 478 F. App'x 945, 951 (6th Cir. 2012) (citing *Spalding v. Vilas*, 161 U.S. 483, 498 (1896)). A prosecutor also lacks immunity when he acts "in the clear absence of all jurisdiction." *Id.* at 952 (quotation omitted). Neither case is present here.

---

[5] Even though Kolodziej's script for Busacca did not disclose exculpatory information, ECF 1, PgID 26–27, Kolodziej still has a right to absolute immunity. *Blake v. Cnty. of Livingston*, 257 F. App'x 848, 855 (6th Cir. 2007) (quoting *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986)) ("[A] prosecutor's 'non-disclosure of exculpatory information [is] certainly entitled to absolute immunity.'").

For one, drafting the arrest warrant and affidavit is within the traditional functions of a prosecutor. See *Lomaz*, 151 F.3d at 499. The act was therefore within Kolodziej's authority as a prosecutor. For another, no party disputed that the Attorney General's office had jurisdiction to pursue the criminal sexual conduct charge against Plaintiff. *See* ECF 1, PgID 26; *see generally* ECF 16; 26. Although Kolodziej was not the prosecutor on the case, ECF 1, PgID 20, the fact does not mean Kolodziej lacked jurisdiction to prosecute the case. Indeed, the complaint's allegations showed only that Kolodziej could not work on the case due to grant-funded constraints, *id.*, not because of a jurisdictional limit. At bottom, Kolodziej is immune from the first claim and the Court will dismiss it.

### 2.     *Warrants Lacking Probable Cause*

The second claim against Kolodziej also asserted a Fourth Amendment violation. ECF 1, PgID 39–41. The second claim, however, differs from the first claim in two ways. First, the claim asserted that, rather than lying in the affidavit, Kolodziej obtained warrants without probable cause. *Id.* And second, the claim applied to both the search and arrest warrants. *Id.*

For the reasons underlying the first claim's dismissal, Kolodziej is immune from the second claim as it relates to the arrest warrant. But Kolodziej has no right to absolute immunity as it relates to the search warrant.

Kolodziej drafted the factual allegations in the search warrant of the house where Plaintiff "had parenting time with" his daughter. ECF 1, PgID 24. The warrant allowed police to seize the electronics in the house. *Id.* The "focus" of the search

warrant was "to search for evidence supporting [Defendant MacMaster's] new false allegations that [Plaintiff] took inappropriate photographs of" his daughter. *Id.*

At its core, the conduct as alleged is investigative and would not fall under Kolodziej's absolute immunity as a prosecutor. *See Cunningham v. Dep't of Child.'s Servs.*, 842 F. App'x 959, 966 (6th Cir. 2021) (citing *Rieves v. Town of Smyrna*, 959 F.3d 678, 694 (6th Cir. 2020) (noting that prosecutors have no right to absolute immunity if they "were functioning as investigators aiding law enforcement officers rather than the judicial process") (emphasis omitted). Kolodziej is therefore not immune from a claim based on the search warrant violating Plaintiff's Fourth Amendment rights.

Still, Kolodziej asserted that he would have absolute immunity because he was a witness in a judicial proceeding. ECF 16, PgID 114. The defense is meritless because Kolodziej would never qualify as a "testifying witness." *Vakilian*, 335 F.3d at 516. Only a "testifying witness" has a right to absolute immunity; a "complaining witness" does not. *Id.* (citations omitted). Witnesses who testify "in a nonadversarial context," like a police officer seeking an arrest warrant, are "complaining witnesses." *Potts v. Olds*, No. 3:10-CV-1186, 2012 WL 4850185, at *10 (N.D. Ohio Apr. 25, 2012); *see also Vakilian*, 335 F.3d at 516 (holding that a witness who testified at an ex parte proceeding was a "complaining witness"). Because the search warrant request was not an adversarial proceeding, Kolodziej has no right to absolute immunity as a witness. *See* ECF 1, PgID 39–40. The Court will therefore deny absolute immunity

12

for Kolodziej on the second claim as it relates to him obtaining a search warrant without probable cause.

### 3.  *Malicious Prosecution and Civil Conspiracy*

The malicious prosecution and civil conspiracy claims turn on the same allegations that Kolodziej went outside his prosecutorial role to prosecute Plaintiff without probable cause. *Compare* ECF 1, PgID 41–42, *with id.* at 45–46.[6]

"The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (cleaned up).

Plaintiff asserted that Kolodziej lacked immunity for his role in starting the prosecution because he lacked authority or jurisdiction to do so. ECF 26, PgID 175. But the Court explained earlier that Kolodziej did not act "clearly beyond his authority" or "in the clear absence of all jurisdiction." *Rouse*, 478 F. App'x at 951–52 (6th Cir. 2012).

Plaintiff also identified several acts such as "scripting false witness testimony, drafting search warrant applications for police to gather probable cause, directing the investigation[,] and drafting interrogation questions" to explain why Kolodziej lacks absolute immunity to the claim. ECF 26, PgID 176. As the Court explained, Kolodziej is immune to the claims that relate to the arrest warrant but not to the search

---

[6] The parties treated the analysis for each claim as the same. ECF 16, PgID 117–18; ECF 26, PgID 174.

warrant. For the remaining acts, Kolodziej asserted that he is immune because his conduct related to "the decision to prosecute[] and the action of prosecuting." ECF 16, PgID 116.

"Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute." *Burns v. Reed*, 500 U.S. 478, 495 (1991). The Court must therefore identify "precisely the wrongful acts alleged[]" and classify whether the acts are entitled to immunity based on their function. *Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011).

Here, "Kolodziej effectively conducted the questioning of witnesses by drafting questions that he wanted [] Schipani to ask and provided her a document with the written questions." ECF 1, PgID 40; *see* ECF 26, PgID 175–76. Drafting questions for a law enforcement officer to ask witnesses would fall within Kolodziej's investigative function—not prosecutorial function. *See Buchanan v. Metz*, 6 F. Supp. 3d 730, 743 (E.D. Mich. 2014), *aff'd*, 647 F. App'x 659 (6th Cir. 2016). Indeed, if the witness interviews occurred before probable cause was established, Kolodziej would have no right to absolute immunity.[7] *See Wendrow v. Mich. Dep't of Hum. Servs.*, 534 F. App'x 516, 527 (6th Cir. 2013) (cleaned up) ("Activities undertaken in an effort to search for clues and corroboration that might give the prosecutor probable cause to recommend that a suspect be arrested are not entitled to immunity."). For that reason, Kolodziej's

---

[7] Based on the complaint, it is unclear when the witness interviews occurred. *See* ECF 1, PgID 40.

aid in an interrogation would also not carry any absolute immunity right. ECF 26, PgID 175; *see Wendrow*, 534 F. App'x at 527 (citing *Joseph v. Patterson*, 795 F.2d 549, 555 (6th Cir. 1986)).

Beyond drafting questions, "Kolodziej directed the police on how to conduct the investigation and establish probable cause." *Id.* at 40. "Absolute immunity [] does not apply to the prosecutorial function of giving legal advice to police as part of the investigative or administrative phase of the criminal case." *Rieves*, 959 F.3d at 691 (quotation omitted). "[A]dvice provided by a prosecutor to an investigator as to how to pursue an investigation or as to the propriety of an arrest" is beyond a prosecutor's advocacy function. *Buchanan*, 6 F. Supp. 3d at 743–44. The Court will therefore deny Kolodziej absolute immunity for the malicious prosecution and civil conspiracy claims at this time as the claims pertain to Kolodziej allegedly directing the criminal investigation and drafting interview questions.

### 4.    *Pretrial Detention*

Kolodziej is immune from the pretrial detention claim for acts within his role as an advocate. Part of the pretrial detention claim arises from Kolodziej's conduct at the bond hearing and the extradition. ECF 1, PgID 34–35, 47–48. At the bond hearing, Kolodziej elicited untruthful testimony and suppressed favorable evidence. *Id.* at 35. The conduct at the bond hearing falls within Kolodziej's role as an advocate and thus he is immune from suit for it. *See Ghaith v. Rauschenberger*, 493 F. App'x 731, 739 n.4 (6th Cir. 2012); *see also Gavitt v. Ionia Cnty.*, 67 F. Supp. 3d 838, 855 (E.D. Mich. 2014). Even though Kolodziej lied—presumably to a judge at a hearing—

that Plaintiff opposed extradition, the conduct falls under his absolute immunity as a prosecutor. ECF 1, PgID 34; *see Burns*, 500 U.S. at 490–92.

That said, Kolodziej has no right to immunity based on "arrang[ing] for Plaintiff's unnecessary transport to Michigan." ECF 1, PgID 47. The transport to Michigan was bizarre, prolonged, and Kolodziej ordered the transport to punish Plaintiff. *Id.* at 34–35. Put simply, deciding how an extradited pretrial detainee should be transported is beyond the prosecutor's role as an advocate. *See Rouse*, 478 F. App'x at 953 (collecting cases).

In the end, the allegations that Kolodziej ordered how Plaintiff should be transported and Kolodziej's motivations for doing so may not be true. But to determine immunity, the Court must assume the complaint's allegations are true. *Kalina*, 522 U.S. at 122. The Court will therefore dismiss in part the pretrial detention claims against Kolodziej based on absolute immunity. The only pretrial detention claim against Kolodziej that remains involves the allegations that Kolodziej determined how Plaintiff should be transported to Michigan.

### B. *Moody*

Plaintiff asserted only one claim against Moody for supervisory liability and failure to train or supervise. ECF 1, PgID 43–45. A supervisory prosecutor—like Moody—has a right to absolute immunity for administrative acts if the act "is directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009). A supervisory prosecutor, for example, would have immunity based on acts

that "necessarily require legal knowledge and . . . related discretion," but not acts such as "workplace hiring" or "payroll administration." *Id.*

Moody asserted absolute immunity only for the allegations that stemmed from the Request to Initiate Litigation against Plaintiff. ECF 34, PgID 396–399. According to the complaint, Moody urged the Attorney General to approve the Request to Initiate Litigation that Kolodziej drafted even though she failed to disclose that she knew Kolodziej had acted improperly while he was investigating Plaintiff's case. ECF 1, PgID 25–26.

Moody is immune from suit for the allegations based on the Request to Initiate Litigation that Kolodziej drafted. Deciding whether to begin criminal litigation against Plaintiff is an administrative duty that "require[s] legal knowledge and . . . related discretion." *Van de Kamp*, 555 U.S. at 344. Indeed, "initiating a prosecution" carries absolute immunity. *Imbler*, 424 U.S. at 431. What is more, deciding to bring criminal litigation against Plaintiff is far from the administrative tasks such as "workplace hiring" and "payroll administration" that the Supreme Court has explained would not carry absolute prosecutorial immunity. *Van de Kamp*, 555 U.S. at 344. The Court will therefore dismiss the supervisory liability claim for the allegations about the Request to Initiate Litigation against Plaintiff.

II.    <u>Qualified Immunity</u>

Qualified immunity "'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*,

810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"To survive the motion to dismiss on qualified-immunity grounds, [P]laintiff must allege facts that plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quotation omitted). "[P]laintiff also must allege with particularity facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Id.* (quotation omitted) (emphasis in original). And "[P]laintiff bears the burden of showing that an officer is not entitled to the defense of qualified immunity." *Id.* (citation omitted).

A.    *Kolodziej*

"Qualified immunity is an affirmative defense." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted). Kolodziej asserted qualified immunity as a defense to the claim that he violated Plaintiff's rights by scripting testimony for Busacca at the swear-to hearing. ECF 16, PgID 113. Because Kolodziej did not assert qualified immunity arguments for the other claims, *see id.* at 114–19, the Court will decline to determine whether Kolodziej has a right to qualified immunity on the remaining claims. *See Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020) (alterations in original) (quotation omitted) ("[I]t is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds because development of the factual record is frequently necessary to decide whether the official's actions violated clearly

18

established law."). Kolodziej may therefore reassert his qualified immunity defense in a summary judgment motion. *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (internal marks and citations omitted) ("Although . . . entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.").

### B.    *Moody*

Moody asserted qualified immunity as a defense to the supervisory liability claim. ECF 34, PgID 399. Moody also argued that the supervisory liability claim failed to state a claim under Rule 12(b)(6). *Id.* at 388–96. Because resolving qualified immunity defenses under the first prong involves the same analysis as a Rule 12(b)(6) dismissal, the Court will grant qualified immunity on the supervisory liability claim because there was no constitutional violation. *Crawford v. Tilley*, 15 F.4th 752, 764–65 (6th Cir. 2021).

The Court will grant the qualified immunity defense based on Plaintiff's motion for leave to amend the complaint. ECF 41. Moody opposed the motion for leave and reasoned that granting leave to amend the supervisory claim against her would be futile. ECF 44, PgID 702–05. Because Moody's futility argument is the same as the qualified immunity argument, the Court will grant qualified immunity. *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020) ("[W]hen a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the

pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint.").

Section 1983 liability for supervisors cannot be based on mere respondeat superior; a supervisor's failure to supervise, control, or train subordinates is actionable only if the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quotation omitted). At a minimum, therefore, a plaintiff must show that the supervisor "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of the offending governmental actor. *Id.* Mere negligence is not enough. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). The showing must rely on each government official's "own individual actions." *Iqbal*, 556 U.S. at 676. A plaintiff must also show "a causal connection between the defendant's wrongful conduct and the violation alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (citation omitted).

Here, Plaintiff asserted that Moody allowed Kolodziej to work on the case during "off hours" despite the Attorney General's Office lacking a policy for working "off hours." ECF 1, PgID 20–21; ECF 41-1, PgID 561. Moody also granted Kolodziej pay raises and promotions. ECF 1, PgID 21–22; ECF 41-1, PgID 562. And Moody did not meaningfully supervise Kolodziej's conduct in Plaintiff's case. ECF 1, PgID 22; ECF 41-1, PgID 562–63. Plaintiff also claimed that Kolodziej told officers that Moody supported his request to remove his name from a Michigan State Police report. ECF 1, PgID 32; ECF 41-1, PgID 574. And Moody failed to adequately supervise Kolodziej

in a different criminal sexual conduct case. ECF 41-1, PgID 556–59. But the allegations fail to show a constitutional violation of supervisory liability for three reasons.

One, merely allowing Kolodziej to work during off hours on a case and granting Kolodziej pay raises fails to show that Moody "implicitly authorized, approved, or knowingly acquiesced in [] unconstitutional conduct." *Shehee*, 199 F.3d at 300. Nothing is unconstitutional about allowing Kolodziej to work off hours or granting him pay raises. Moody's conduct would open herself up to supervisory liability if, for instance, Moody directed Kolodziej to engage in conduct that violated Plaintiff's rights so long as he did so during off hours. But those allegations are not present in the complaint or the proposed amended complaint.

Two, the complaint and the proposed amended complaint's allegations that Moody did not meaningfully supervise or oversee Kolodziej so that she could benefit from her personal relationship with him is a legal conclusion. ECF 1, PgID 22; ECF 41-1, PgID 562–63. The Court must ignore legal conclusions at the motion to dismiss stage. *Iqbal*, 556 U.S. at 678. The allegations do not identify how Moody failed to oversee Kolodziej's work on Plaintiff's case. *See* ECF 41-1, PgID 562–63. In fact, the allegations failed to identify what precise unconstitutional acts Kolodziej committed that Moody could have either known about or condoned. Plus, the allegation that Moody supported Kolodziej's request to remove his name from a Michigan State Police report also failed to identify whether Moody knew about or condoned Kolodziej's behavior. *See* ECF 1, PgID 32; ECF 41-1, PgID 574. After all, the

allegation stressed that "*Kolodziej suggested* to the [Michigan State Patrol Officers] that Laura Moody was aware of the need for the change and supported it." ECF 41-1, PgID 574 (emphasis added). No allegation therefore showed that Moody *knew* Kolodziej wanted to change a police report.

Three, the complaint's allegations about Moody's poor supervision of Kolodziej in a different criminal sexual conduct case lacks a connection to the constitutional violations against Plaintiff. ECF 41-1, PgID 556–59. At most, the allegations from the other criminal sexual conduct case showed that the defendant in that case would have a viable supervisory misconduct claim against Moody. *See id.* Because the conduct in the other criminal sexual conduct case was detached from Plaintiff's case, no causal connection exists between the poor supervision and the constitutional violations that Kolodziej inflicted on Plaintiff. *See Peatross*, 818 F.3d at 242. Given that the proposed amended complaint fails to show a constitutional violation for supervisory liability against Moody, the Court will grant qualified immunity to Moody.

## CONCLUSION

Absolute prosecutorial immunity "is the product of a Court, which is the product of a law-profession culture." *Lawrence v. Texas*, 539 U.S. 558, 602 (2003) (Scalia, J., dissenting); *see generally Imbler*, 424 U.S. at 424–27. It protects lawyers. The reason our Courts allow absolute immunity is so that prosecutors may carry out their duties without "the constant dread of retaliation." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (Hand, J.). In cases that allege grotesque prosecutorial abuses, absolute immunity is a harsh trade-off. In these cases, the beneficiaries hold

22

advanced educational degrees and will still be able to protect their livelihoods. But, in the Court's experience, the parties who bear the brunt of this harsh trade-off are often working class and have had their lives shattered. Because the Court must apply our Circuit's absolute immunity precedent, some of the grotesque prosecutorial abuses alleged in the complaint must be dismissed.

The Court has granted in part and denied in part Kolodziej's motion to dismiss and has granted Moody qualified immunity. Because Plaintiff moved for leave to file an amended complaint, the Court will grant the motion for leave in part. Plaintiff may file an amended complaint that complies with this Opinion and Order. The amended complaint may not include claims that have already been dismissed in this Opinion and Order. Granting leave now is proper because the Court has not held a Rule 16 scheduling conference. Given the early litigation stage, the parties will not face any undue prejudice because of the amendment, and Plaintiff has shown good faith to correct pleading deficiencies at this early stage. *See Wade*, 259 F.3d at 458–59. Plaintiff must file an amended complaint no later than January 14, 2022. The remaining Defendants must answer or otherwise respond to the amended complaint no later than two weeks after Plaintiff files the amended complaint. Fed. R. Civ. P. 15(a)(3). After all parties have answered the complaint, the Court will schedule a Rule 16 scheduling conference.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant Kolodziej's motion to dismiss [16] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Moody's motion to dismiss [34] is **GRANTED**.

**IT IS FURTHER ORDERED** that the claims against Defendant Moody are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a first amended complaint [41] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff may **FILE** an amended complaint that complies with this Opinion and Order **no later than January 14, 2022**.

**IT IS FURTHER ORDERED** that Defendants must **ANSWER** or otherwise **RESPOND** to the amended complaint no later than two weeks after Plaintiff files the amended complaint.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: December 31, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 31, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager