UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MACMASTER,

               Plaintiff,

v.

DAVID BUSACCA, et al.,

               Defendants.

_____/

Case No. 2:21-cv-11052

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
<u>MOTION FOR SUMMARY JUDGMENT [110]</u>**

The State of Michigan arrested and incarcerated Sean MacMaster after his ex-wife, Johanna MacMaster accused him of abusing their minor daughter, AM. But after it emerged that a prosecutor involved in the case had committed misconduct, Michigan dropped all charges. Sean MacMaster then sued Johanna MacMaster, the disbarred prosecutor Brian Kolodziej, and State Trooper David Busacca for several constitutional violations. ECF 1; ECF 53.[1] Each Defendant moved for summary judgment. For the reasons explained below, the Court will deny Johanna's motion for summary judgment.

---

[1] Plaintiff's initial complaint also named Lauren Schipani, Laura Moody, and Detective Michael Gerald as defendants. ECF 1, PgID 1. But they are no longer part of the case. *See* ECF 68 (dismissing Schipani); ECF 84 (dismissing Moody); ECF 119 (granting Gerald's motion for summary judgment).

## BACKGROUND

The Court will incorporate by reference the background sections from its previous Orders, ECF 118 and ECF 125, and add the following:

In December 2020, the Florida court handling the custody dispute between Sean and Johanna MacMaster held Johanna in civil contempt of court. ECF 113-9, PgID 4778. The court found, *inter alia*, that Johanna "never intended to use the Ortega interviews to get help for the child, [AM]." *Id.* at 4765. Instead, reaching out to the Ortegas was part of Johanna's plan to circumvent the court's orders by pursuing "criminal charges against the Father," Sean MacMaster. *Id.* at 4768. Indeed, when Dr. Ortega asked to speak with the court-appointed reunification therapist, Johanna refused to sign the release. *Id.* at 4768. Had the Ortegas spoken with the therapist, they might have learned that AM previously admitted to lying about the abuse. *See* ECF 113-8, PgID 4759 ("No, that's a lie. Daddy never hurt me. Daddy never hurt me.").[2]

For clarity and simplicity's sake, the Court will refer to Johanna MacMaster by her first name.

---

[2] The Court is aware that minors do not always recognize that sexual contact with adults is abusive. And so, on its own, the phrase "Daddy never hurt me" might not be synonymous with "Daddy never abused me." Here, however, context suggests that sexual abuse was encompassed within AM's usage of the word hurt. At first, AM said that she stopped seeing her dad "because he hurt me." ECF 113-8, PgID 4759. Then, after a brief pause, she admitted, "No, that's a lie. Daddy never hurt me. Daddy never hurt me." *Id.* AM then explained how her mom pressured her into not admitting that nobody hurt her. *See id.* at 4760. The entirety of Dr. Stulberg's testimony therefore suggests that AM admitted to lying about the abuse, especially when drawing reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

2

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

## DISCUSSION

Sean MacMaster sued Johanna MacMaster for civil conspiracy in violation of § 1983, federal malicious prosecution in violation of § 1983, and state law malicious prosecution. ECF 53. Johanna moved for summary judgment on each count. ECF 110.

I.    Civil Conspiracy

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quotation marks and quotation omitted). To prevail on a civil conspiracy claim, Plaintiff must show that (1) a single plan existed, (2) the defendants shared in the general conspiratorial objective to deprive Plaintiff of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to Plaintiff. *Id.* "A plaintiff, however, need not allege or produce direct evidence of a conspiracy; circumstantial evidence may provide adequate proof." *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 902 (S.D. Ohio 2016) (quotation marks and quotation omitted).

Here, Plaintiff contended that Johanna entered a conspiracy with law enforcement to maliciously prosecute her ex-husband without probable cause. Johanna argued, however, that she could not be liable for civil conspiracy under § 1983 because she was not a state actor. ECF 110, PgID 3623. And normally, private citizens cannot act under color of state law.

But § 1983 can sometimes apply to private individuals. *Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 139 (6th Cir. 2023) ("Section 1983's text and history confirm that it covers the acts of private individuals in certain cases."). For § 1983 liability to attach, the conduct must be "fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Plaintiff pointed to conspiracy as the applicable hook here. ECF 113, PgID 4654–56.

4

"[A] private party may conspire with the state and be liable under § 1983." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989). For example, in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970), the plaintiff sued a Mississippi department store under § 1983 over its segregated lunch counter. *Id.* at 149. Plaintiff alleged that the department store conspired with local police to unlawfully maintain segregation. *Id.* at 149–51. Plaintiff only sued the store—not the police. In reversing the Circuit Court's decision to uphold summary judgment for the store, *id.* at 153, the Supreme Court held that private persons who conspire with state officials can be liable under § 1983. *Id.* at 152; *see also Dennis v. Sparks*, 449 U.S. 24, 28, 101 (1980) (holding that private parties who allegedly conspired with a judge through bribery acted "under 'color of law' for purposes of § 1983 actions"); *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983."); *Simonds v. Boyer*, No. 21-cv-841, 2022 WL 11964613, at *6 (W.D. Pa. Oct. 20, 2022) ("A private citizen can be liable under Section 1983 for malicious prosecution.").

Defendant cited *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) for the proposition that "reporting crimes or threats is not an act under color of state law." ECF 115, PgID 4877–78. In *Moldowan*, the Sixth Circuit considered several § 1983 conspiracy claims. 578 F.3d at 394–95. And the court noted that "[p]roviding information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for

actions taken 'under color of law.'" *Id.* at 399. But the court did so *after* having found that plaintiff's conspiracy claims—against public and private actors—failed for lack of specificity. *Id.* at 395 (concluding that plaintiff's claims lacked "the requisite material facts and specificity necessary to sustain a conspiracy claim"). The court also cited a Tenth Circuit case for the proposition that "[t]he *mere* furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985." 578 F.3d at 399 (emphasis added) (quoting *Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir. 1983)). The word "mere" suggests that some other combination of conspiratorial acts could, however, constitute state action.

Building on *Moldowan*, the Sixth Circuit recently affirmed that deliberately lying to get someone arrested was not enough to show that a private party's "conduct was fairly attributable to the state or that she was participating in a joint action with state agents." *Weser v. Goodson*, 965 F.3d 507, 517 (6th Cir. 2020); *see also Akins v. Kilfoile*, No. 08CV-P586-R, 2009 WL 723209, at *2 (W.D. Ky. Mar. 18, 2009) ("[T]he mere furnishing of information by a private party to a law enforcement official, even if the information is false, is not sufficient to constitute joint activity with State officials in prohibited action or to state a claim against a private party under § 1983.").

Communicating or cooperating with the police is thus not enough to sustain a conspiracy claim under § 1983. Rather, plaintiffs need to present some additional proof. For example, in *Simonds*, the court found that a complaint stated a conspiracy claim against an administrative assistant and a judge who allegedly employed

intimidation tactics and initiated a retaliatory criminal prosecution to protect a co-Defendant police officer. 2022 WL 11964613, at *1, 6. And in *Conte v. County of Nassau*, No. 06-CV-4746, 2008 WL 905879 (E.D.N.Y. Mar. 31, 2008), the court found that a complaint stated a conspiracy claim against a police officer's wife because the officer was under the "control or influence" of the wife, who allegedly submitted and spread the false accusation at the heart of the conspiracy. *Id.* at *21, 30.

Here, a jury could conclude that Johanna did much more than merely communicate or cooperate with the police. Unlike the defendants in *Moldowan* and *Weser*, Johanna's links with her co-defendants were far more personal and unusual.

To begin, because Kolodziej had a romantic relationship with Johanna MacMaster's cousin, a reasonable jury could conclude that Kolodziej was under the control or influence of Johanna. *See Conte*, 2008 WL 905879, at *21. The cousin was an office assistant at the Macomb County Prosecutor's Office, where Kolodziej worked as a prosecutor. ECF 112-2, PgID 4457–58. But Plaintiff's supposed crimes allegedly occurred in *Oakland County*, where Kolodziej had no jurisdiction. Still, Kolodziej started working on the case. And when Kolodziej recruited Center Line Detective Michael Gerald to help, Gerald agreed because Kolodziej was "madly in love" with Johanna's cousin and "trying to show off for [her]." ECF 112-8, Pages 42, 51. Through the personal relationship between her cousin and Kolodziej, Johanna was thus arguably able to deploy law enforcement who lacked jurisdiction over the case.

The timing of Kolodziej's work on the case raises additional concerns. After a flurry of activity on the *MacMaster* case in spring 2018, Kolodziej did little if any work

on it over the summer. *See* ECF 102-14, PgID 1923. Then, in October 2018, around the same time Johanna's cousin broke up with him, Kolodziej started moving the case forward again, reaching out to Busacca who started emailing about the case. *See* ECF 118, 125; *see also* ECF 112-7, Page 27; ECF 111-1, Page 82. Given the suspicious timeline, a jury could find that Kolodziej's prodding of the prosecution was motivated by his romantic entanglement with Johanna's family member.

In addition, a jury could find that the close relationship between Kolodziej, Johanna, and AM raises eyebrows. Kolodziej had a squirt gun fight with AM in the Attorney General's office, he attended church and prayed the rosary with Johanna's grandmother, he gave AM a book signed by the Michigan Attorney General, he played AM her favorite song on the guitar, he took AM horseback riding on her birthday, and he took AM to the Detroit Institute of Art with her mother and Special Agent Lauren Schipani, with whom Kolodziej also had a brief romantic relationship. ECF 118, PgID 4897. Such links between a prosecutor and a victim's family are highly unusual.

Plaintiff also presented evidence that Kolodziej and Busacca had actual knowledge of Johanna's intent to use the abuse allegations to force Plaintiff to give up his parental rights. Specifically, both Kolodziej and Busacca knew about the McDonald's recording, which they discussed at a meeting on January 23, 2019. ECF 103-21, Page 64. In that recording, Johanna suggested that she would drop the allegations if Plaintiff signed away his parental rights and even presented a document for him to sign to that effect. *See generally* ECF 113-1 (transcript of recording). She also told Plaintiff that terminating his parental rights was his "get-

out-of-jail-free card." *Id.* at 4692. And she admitted that she did not believe that Plaintiff ever abused their daughter, even though—days before—Johanna was the one who reported the alleged abuse to the police. *Id.* at 4673, 4678; ECF 110-2, PgID 3632–33. Nevertheless, Kolodziej and Busacca continued to push the case forward.

As detailed in the Court's prior order, ECF 125, Busacca also altered official documents to hide Kolodziej's involvement in the case and intentionally omitted any mention of Kolodziej's involvement in subsequent testimony. A reasonable jury, reviewing all the evidence, could thus conclude that Busacca's actions were part of a cover up, designed to protect his co-conspirator.

Finally, the Court previously found that the search and arrest warrants for Sean MacMaster, based on the allegations from Johanna, lacked probable cause.[3] ECF 118, 125. And the Court determined that a reasonable jury could find that material evidence was omitted from the warrants with the intention of misleading the court.

In light of the analysis set forth above, a jury could find that Johanna, along with Kolodziej and Busacca, shared the single plan of maliciously prosecuting Plaintiff for child abuse without probable cause. *See Bazzi*, 658 F.3d at 602. Several

---

[3] To be clear, AM made the initial allegations, and Johanna reported the allegations to the police, possibly knowing that they were false. Some evidence suggests that Johanna's actions tainted and influenced AM's retelling of what occurred. *See* ECF 111-22, Page 57; *see also* ECF 113-6, PgID 4737. And other evidence suggests that Johanna pressured AM into maintaining the false allegations. *See* ECF 113-8. Given those facts, in combination with AM's "extreme attachment" and codependence on her mother, ECF 113-7, PgID 4744, the Court describes the allegations as coming "from Johanna."

overt acts occurred, most notably the procurement of the search and arrest warrants. *See id.* And because the conspiracy was with law enforcement, Johanna's status as a private citizen does not insulate her from liability under § 1983. The Court will therefore deny summary judgment on the conspiracy claim.

II.  <u>Fourth Amendment Malicious Prosecution</u>

Malicious prosecution under the Fourth Amendment "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006) (quotation marks and quotation omitted). To succeed on a § 1983 malicious-prosecution claim, a plaintiff must prove: (1) "that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute"; (2) "that there was a lack of probable cause for the criminal prosecution"; (3) "that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial seizure"; and (4) that "the criminal proceeding was resolved in the plaintiff's favor." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (alterations omitted).

To begin, Johanna argued that she "did not make, influence, or participate in the decision to prosecute" Plaintiff. ECF 110, PgID 3620. Johanna cited two cases in support of her argument. *Id.* First, she cited *Miller v. Davis*, 653 F. App'x 448 (6th Cir. 2016), which noted that a police officer's report, though "indisputably fundamental to the commencement of the criminal proceedings," did not subject him to liability for malicious prosecution. *Id.* at 455–56. Second, she cited *Kinkus v. Village of Yorkville*, 289 F. App'x 86 (6th Cir. 2008), which involved a police officer

10

who filed a police report, signed a blank criminal complaint, and solicited a written report from another officer yet was not held liable for malicious prosecution. *Id.* at 91.

Both cases are inapposite. In *Miller*, the court expressly noted that there was no evidence that the officer "provided false information," that he "knew such information was false, or that the information was material." 653 F. App'x at 455–56. Here, however, a reasonable jury could find based on the McDonald's recording that Johanna knew the allegations were false. *See* ECF 113-1. Moreover, after the family court in Florida determined that the abuse allegations were not credible, Johanna violated court orders by meeting with the Ortegas, hid evidence from the Ortegas, and generally pursued her "plan-B" of having Plaintiff criminally prosecuted. *See* ECF 113-9, Page 6.

As for *Kinkus*, the court held that a "defendant could not be liable for malicious prosecution where the plaintiff presented no evidence suggesting that defendants conspired with, influenced, or even participated in, the prosecutor's decision to bring charges against him." 289 F. App'x at 92 (cleaned up). But, as noted above, Plaintiff presented evidence from which a jury could conclude that a conspiracy existed, and he presented even more evidence suggesting that Johanna influenced the prosecution. *See generally* ECF 125.

Of course, "merely filing an allegedly misleading case report, without more active participation, qualifies only as 'passive or neutral' participation and is thus an insufficient basis for a malicious-prosecution claim." *Richards v. County of*

11

*Washtenaw*, 818 F. App'x 487, 493 (6th Cir. 2020). But when an individual takes a more active role in the prosecution, she can face liability for malicious prosecution. *See Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). Plaintiff must show "some element of blameworthiness or culpability in the participation—albeit less than 'malice.'" *Id.* at 655. Accordingly, courts require "deliberate or reckless falsehoods result[ing] in arrest and prosecution without probable cause." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).

In its previous order, ECF 125, the Court stressed how Busacca admitted to reviewing the family court documents and the McDonald's recording. Together, these pieces of evidence shattered probable cause to believe that Plaintiff possessed evidence of a crime or committed a crime. Here, Johanna had actual knowledge of all the exculpatory information from the family court documents and the McDonald's recording because she witnessed everything firsthand. A reasonable jury could thus conclude that Johanna was culpable because she knowingly spread deliberate or reckless falsehoods that led to Sean MacMaster's prosecution without probable cause. *See Johnson*, 790 F.3d at 655. Johanna's personal and professional entanglements with Kolodziej, as well as her actions surrounding the Ortega interviews, would further bolster such a finding.[4] The Court will therefore deny summary judgment on the Fourth Amendment malicious-prosecution claim.

---

[4] Johanna also argued that she did not act under color of state law and that probable cause existed for the arrest and subsequent prosecution of Plaintiff. ECF 110, PgID 3619–22. But the Court already explained that entering a conspiracy with law enforcement is enough for state action under § 1983, *see ante*, and that the prosecution of Plaintiff lacked probable cause, *see* ECF 118, 125.

III.   State Law Malicious Prosecution

Malicious prosecution under Michigan law largely mirrors federal law. But Michigan law requires "that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Zavatson v. City of Warren*, 714 F. App'x 512, 524 (6th Cir. 2017) (quoting *Matthews v. Blue Cross & Blue Shield of Mich.*, 456 Mich. 365, 378 (1998)). In addition, under Michigan law, "[i]f the police or the prosecutor initiate the prosecution on the basis of evidence obtained through their own *independent investigation,* the complaining victim is insulated from liability." *Moldowan*, 578 F.3d at 400 (citing *Matthews,* 456 Mich. at 385 n.27). Because the court already determined that the federal malicious prosecution survives summary judgment, the Court need only consider the two elements of malicious prosecution that differ under Michigan law. Neither element makes a difference.

First, based on the McDonald's recording, a reasonable jury could conclude that the prosecution had an improper motive, namely ensuring that Johanna got sole custody of AM. Even Trooper Busacca admitted that the McDonald's recording "doesn't look good" because "[i]t looks like there's a motive" behind the abuse allegations. ECF 112-5, PgID 4501.

Second, a reasonable jury could conclude that the prosecution was not based on any independent investigation. Johanna argued that Busacca "conducted an independent review and investigation, relied on the disclosures made to the child's mental health treaters, and obtained inculpatory evidence—the semen samples—

13

that corroborated the child's disclosures," thereby absolving Johanna of any liability under state law. ECF 110, PgID 3625; *see also* ECF 115, PgID 4881.

To be sure, "in Michigan, the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution." *Matthews*, 456 Mich. at 384 (citing *Christy v. Rice*, 152 Mich. 563, 565 (1908)). But a private person cannot escape liability if they furnished information upon which the prosecutor acted that was known to be false. *Matthews*, 456 Mich. at 385. Nor can a private person escape liability when they successfully apply "improper pressure or inducement" to the prosecutor. *Id.* at 386; *see also Renda v. Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am.*, 366 Mich. 58, 83 (1962) ("[A] person who supplies information to the prosecuting authorities concerning persons possibly implicated in a crime is not himself the prosecutor, unless he knows the information he is supplying to be false, or unless he exerts improper influence upon the prosecuting authorities.").

Here, a reasonable jury could conclude that Johanna—having entered into a conspiracy with Kolodziej and Busacca—furnished information known to be false, and that the prosecution relied on that information. *See Matthews*, 456 Mich. at 379 ("A plaintiff's prima facie [malicious prosecution] case against a private person requires proof that the private person instituted or maintained the prosecution and that the prosecutor acted on the basis of information submitted by the private person that did not constitute probable cause.").

14

Plaintiff presented the McDonald's recording. That evidence suggested that Johanna knew the allegations against her ex-husband were false, but she nevertheless pushed forward with the prosecution.[5] And he presented evidence that Busacca and Kolodziej knew that the allegations were false. *See* 103-21, Page 64; *see also* ECF 118, 125 (concluding that Kolodziej and Busacca each omitted information from one or more warrants with the intent of deceiving the court).

The record further suggests that the prosecution never conducted an independent investigation, *i.e.*, they simply relied on AM's allegations as provided by Johanna. Sure, after Busacca joined the case in October 2018, the police executed a search warrant at the Orr home and obtained forensic evidence. The forensic evidence, however, did not corroborate the abuse allegations. *See* ECF 125, PgID 4946–47, 4970–71. The police did not locate any child sexual abuse material at the home. And the possible presence of seminal fluid linked to Plaintiff, in the makeshift bedroom where he was staying at his parent's home, feet from his mattress, did not corroborate the allegations. The forensic evidence was obtained *three years* after the last abuse allegations, and the abuse involving ejaculation was not alleged to have occurred in that room. Because the forensic evidence did not corroborate the abuse allegations, the subsequent prosecution relied substantially on AM's unreliable allegations, which had been teed up by Johanna MacMaster.

___

[5] Plaintiff also presented evidence that Johanna pressured AM. *See* ECF 113-8. For example, AM tried to tell her mom that she lied about the abuse, but to no avail: "I tried telling my mom, I said daddy didn't hurt me, and she said yes, he did." *Id.* at 4760. AM's mom also threatened, "If you tell people that nobody hurt you, I will have to go away, because people will think I told you to say it." *Id.*

The prosecution no doubt relied on allegations arising from the CARE House interviews and the Ortega interviews. *See* ECF 110-11. The CARE House interviews occurred in January 2016, ECF 110-4, and the Ortega interviews occurred in August 2018. ECF 110-7. But Kolodziej had no jurisdiction over the case until at least *September* 2018, when he left the Macomb County Prosecutor's Office and joined the Office of the Michigan Attorney General. ECF 112-1, PgID 4433. And Kolodziej did not reach out to Busacca until October 2018. ECF 102-14, PgID 1923. Although Busacca spoke with Johanna and the Ortegas, *id.* at 1924, the arrest warrant was primarily based on the allegations made before fall 2018. *See* 110-11.[6]

A jury could thus conclude that, instead of conducting their own independent investigation, the authorities relied on the false information supplied by Johanna, which did not establish probable cause. *See* ECF 118, 125 (discussing lack of probable cause for the prosecution).

Beyond the false information, a jury could independently conclude that Johanna improperly pressured or induced the authorities, specifically through the above-described romantic entanglement between Kolodziej and Johanna's cousin. *Contra Matthews*, 456 Mich. at 384.

---

[6] After meeting with Johanna on April 10, 2018, Kolodziej reached out to Center Line Police Detective Michael Gerald, who also lacked jurisdiction over the case. ECF 102-14, 1923. But "[t]ere is no evidence the two did anything more [than] organize Johanna's materials." *Id.* Accordingly, even if the Court found that Kolodziej's activities before he had jurisdiction over the case could count as an independent investigation, organizing papers from Johanna can hardly qualify as an independent investigation. In addition, the August 2018 Ortega interviews were sought out by Johanna rather than Kolodziej, Gerald, or Busacca, so those cannot count either. *See id.* (noting that "[n]othing further occurred with the case until October of 2018").

16

The Court does have concerns about allowing the state law malicious prosecution claim to proceed against Johanna MacMaster. After all, the Florida court—while holding Johanna in civil contempt of court—noted that "there has never been a day that the Mother, Johanna MacMaster, did not believe that the Father, Sean MacMaster, molested AM." ECF 113-9, Pg 4764. And a jury might find that Johanna acted in good faith, seeking justice for wrongs done to her daughter. But Plaintiff also presented evidence from which a reasonable jury could conclude the opposite—that Johanna maliciously pushed allegations that she knew were false to gain an advantage in a contentious custody dispute. *See generally* ECF 113-1. Only a jury can weigh the competing evidence. And so, the Court will deny summary judgment on the state law malicious prosecution claim.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant Johanna MacMaster's motion for summary judgment [110] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 27, 2025

17